UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLUE BOOK SERVICES, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | :    JURY TRIAL DEMANDED |
| | : |
| FARM JOURNAL, INC., | : |
| | : |
| Defendant. | : |
| | : |

## COMPLAINT

Plaintiff Blue Book Services, Inc. ("*Blue Book*" or "*Plaintiff*"), by and through its attorneys, Chapman and Cutler LLP, for its Complaint against Defendant Farm Journal, Inc. d/b/a Farm Journal Media ("*Farm Journal*" or "*Defendant*"), alleges as follows:

### SUMMARY

1.      Blue Book is the primary source of credit rating information for businesses in the produce industry. Blue Book's members deal in perishable agricultural goods, so they rely on Blue Book's credit ratings to decide whether a counterparty is creditworthy. Recently, Defendant Farm Journal launched the "Produce Market Guide," a website that Farm Journal operates and urges its customers to use as a tool for the mass infringement of Blue Book's copyrighted credit ratings.

2.      Before launching the Produce Market Guide, Farm Journal published the "Red Book" a competing source of credit ratings that had been published in competition with Blue Book for decades. But the popularity of the Red Book declined significantly in recent years as businesses turned to Blue Book, and Farm Journal ceased publishing the Red Book. Instead, it had a different idea–it would simply copy Blue Book's ratings.

3.      Farm Journal makes no secret of its infringement.  In fact, it sent a memorandum to Blue Book's CEO admitting that over 400 of Blue Book's copyrighted ratings had been posted to Farm Journal's website, and stating in the excerpt below that Blue Book should actually be happy about Farm Journal's infringement:



---

### *MEMORANDUM*

---

**DATE:**        July 11, 2018
**TO:**          Jim Carr
**FROM:**        Jeff Pence
**SUBJECT:**     BlueBook Ratings on Produce Market Guide

---

*** *

We appreciate that a BlueBook score is special.  We also presume that the BlueBook business model is one that relies on, and monetizes, <u>use</u> of a BlueBook score.  So, to those goals, we view inclusion on PMG a positive value to BlueBook.

For reference, to date we have roughly 400 companies that have voluntarily posted their BlueBook rating on PMG.  User-feedback has been positive.

4.     Farm Journal's infringement works like this: in print and online advertisements, Farm Journal tells Blue Book's subscribers to post their Blue Book ratings to a specifically configured field on Farm Journal's website, thereby bypassing Blue Book and shifting customers to Farm Journal's site:



5.     Blue Book's Terms of Use expressly prohibit its customers from posting their Blue Book Ratings on third party websites.  With good reason–in addition to Farm Journal's massive copyright infringement, Blue Book has also detected instances of falsely inflated ratings on Farm Journal's website, which threatens irreparable harm not only to Blue Book, but the produce industry as a whole.

6.     Blue Book has made numerous attempts to resolve this dispute with Farm Journal. Blue Book's CEO first informed a senior member of Farm Journal's management by email on

May 19, 2018 that the reposting of Blue Book Ratings was a breach of Blue Book's Terms of Use (and thereby exceeded each user's license). Farm Journal promised to make a proposal for resolving the dispute, but instead sent the memorandum cited above, admitted infringement, and asserted that its theft of Blue Book Ratings is actually beneficial to Blue Book.

7.     Blue Book subsequently sent its copyright registration to Farm Journal and offered to discuss a license, but received no response. A further cease and desist letter was also ignored. Having exhausted all opportunities for resolving this matter without court intervention, Blue Book now brings this action to stop Farm Journal's direct, intentional inducement of, and knowing and material contribution to, the widespread infringement of Blue Book's copyright.

<div align="center">INTRODUCTION</div>

8.     Blue Book's claims arise out of the ongoing, willful infringement of its copyrighted financial strength ratings (*"Blue Book Ratings"* or *"Ratings"*) by Farm Journal, a competitor whose efforts to free ride on Blue Book's copyrighted works threatened irreparable harm to the business Blue Book has built based on the licensing of such works.

9.     Founded in 1901, Blue Book's core business is to collect and analyze financial information, surveys, and other relevant data on businesses in the produce industry. Blue Book employs a team of analysts who review this data and update company ratings on a daily basis. Blue Book's subscribers pay an annual membership fee that allows them to receive a Blue Book Rating. The Rating allows people who want to do business with Blue Book members to assess their creditworthiness, payment history, and other relevant information that is critical when businesses deal in perishable goods such as produce.

10.     Unlike reports of stock price movements or bond yields, Blue Book's Ratings are creative, expressive works that reflect the myriad choices that Blue Book makes in applying its

own proprietary methodology to the sophisticated analysis of information from a wide variety of public and private sources.

11.    Blue Book's use of its copyrighted Ratings and ratings analyses in its various products and services generates substantial licensing revenue, which Blue Book relies on to support its overall Ratings business.

12.    Defendant Farm Journal is not a licensed subscriber to Blue Book's database.  In fact, Farm Journal is a competitor of Blue Book that makes money from offering costly, fee-based online products to its own licensed subscribers.  Those products consist of information supplied to Farm Journal by third parties, including by inducing Blue Book members to post their ratings. Upon information and belief, Farm Journal generates additional revenue by generating traffic to its website.

13.    In disregard of Blue Book's copyrights in its Ratings, Farm Journal has willfully copied, displayed and distributed Blue Book's copyrighted information in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

14.    The scale of Farm Journal's wholesale taking of Blue Book's copyrighted works cannot be overstated.  Having misappropriated Blue Book's copyrighted works, Farm Journal then republished and distributed, without authorization from or compensation to Blue Book, the Ratings of at least 400 Blue Book members.

15.    Farm Journal's infringing activities have caused Blue Book to suffer and continue to suffer significant and irreparable harm, because its copyrighted materials and other proprietary information are being reproduced, republished, distributed and misused by Farm Journal without Blue Book's permission.  Farm Journal's unauthorized activities have allowed it to create its own competing    commercial    database    of    Blue    Book    Ratings,    accessed    at

http://www.producemarketguide.com (the *"PMG Website"*). In so doing, Farm Journal diverts customers, and prospective customers, from Blue Book.

16. Farm Journal prompts users to post their Blue Book Ratings to the PMG Website.

17. Farm Journal knows that the posting is without Blue Book's authorization.

18. Farm Journal knows that the posting of Blue Book Ratings by its members is a violation of Blue Book's Terms of Use.

19. Farm Journal advertises the PMG Website as being able to provide key information about a company in the form of a "financial snapshot."

20. Farm Journal advertises its "financial snapshot" as a way to "[m]ake informed business decisions with financial insights on produce companies" including Blue Book Ratings:



21. Farm Journal charges a fee to allow its subscribers unlimited access to the financial snapshot.

22.    Farm Journal allows other subscribers access to the financial snapshot, which includes the Blue Book Rating.

23.    Farm Journal's subscribers are given access to the Ratings through the PMG Website.

24.    PMG Website subscribers can display Ratings on their computer.

25.     PMG Website subscribers can also download the information to their computer.

26.    Farm Journal further distributes and displays the financial snapshot having the Blue Book Rating at the request of a subscriber.

27.     The PMG Website shows the Rating on the subscriber's computer screen, and loads the rating onto the subscriber's computer at the request of the subscriber.

28.    Farm Journal's direct and indirect infringement of the Blue Book Rating thus siphons away subscribers, and prospective subscribers, from Blue Book's service to the PMG Website.

29.    Farm Journal's acts of infringement have, at least, taken place between April 18, 2018 and July 17, 2018 and continue thereafter. Farm Journal's acts of infringement were done without authorization of Blue Book and with full knowledge by Farm Journal that they were in violation of Blue Book's copyright in the Blue Book Ratings.

30.    The issuance of preliminary and permanent injunctive relief against Farm Journal's illegal activities is necessary to prevent further damage to Blue Book.

## JURISDICTION AND VENUE

31.    This is an action for copyright infringement in violation of 17 U.S.C. §§ 101 *et seq*.

32.    The original and exclusive jurisdiction of this Court over this action is conferred by 28 U.S.C. §§ 1331 and 1338(a) and because Blue Book's copyright infringement claims arise under Section 501(a) of the Copyright Act, 17 U.S.C. § 501(a).

33.     This Court has personal jurisdiction over Farm Journal because Farm Journal maintains its National Sales Headquarters, Digital Media Division, and Database Division in Rosemont, Illinois, within this judicial district.

34.     Farm Journal also currently transacts and solicits substantial business in the State of Illinois and within this judicial district, and actively solicits and has obtained customers for the PMG Website in Illinois.  One such example is Benny's Farm Fresh Distributing Co. of Chicago, Illinois, which posted its Blue Book Rating to the PMG Website.  A search of the "Regions" section of the PMG Website also shows that 1,071 Illinois companies have been listed on the PMG Website.

35.     Farm Journal also has at all relevant times purposefully, systematically, and continuously directed contacts to and conducted business in Illinois which have given rise to the acts of infringement and damages and harm sustained by Blue Book within this judicial district. As noted above, Blue Book is headquartered in this district and sustains harm in this district as a result of the posting of Blue Book's copyrighted Ratings to the PMG Website.

36.     Venue in this district is proper under 28 U.S.C. §§ 1391(b) and 1400(a).

## PARTIES

37.     Blue Book is an Illinois corporation with its principal place of business in Carol Stream, Illinois.  Founded in 1901, Blue Book is a full-service credit rating organization dedicated to serving the produce and lumber industries.

38.     Upon information and belief, Farm Journal is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.  Farm Journal currently maintains its National Sales Headquarters, Digital Media Division, and Database Division in Rosemont, Illinois, for the transaction of business.

## FACTS COMMON TO ALL COUNTS

**A.     Blue Book's Ratings and Ratings Information Are Original Expressions of Its Complex Rating Analysis**

39.     Blue Book is the produce industry's oldest, largest, and most-recognized source for rating information, having provided its opinions of creditworthiness to licensed subscribers since 1901.

40.     A significant feature of Blue Book's business is its "Blue Book Rating." Unlike real world "facts" such as stock prices, bond yields, or exchange rates–facts that are not created by any entity but rather have an independent existence and are capable of being "discovered," a Blue Book Rating reflects Blue Book's original, copyrightable expression. Put simply, the only reason the Blue Book Ratings exist is because Blue Book makes myriad choices and creative decisions as part of its analysis of a produce business' financial strength and ability to meet its ongoing obligations.

41.     In creating Blue Book Ratings, Blue Book applies its own proprietary methodology, making numerous creative choices about what information to consider, what to exclude, and what weight to assign to the numerous data points that inform its analysis about each company that it rates. Blue Book's rating assessment begins with the compilation of detailed public and proprietary financial information, including partner surveys, past payment history, operational history, annual and quarterly financial statements, regulatory filings, public records information and, if Blue Book deems it appropriate, the rated company's responses to a questionnaire. *See* Ex. A (explaining how to understand Blue Book's unique rating system).

42.     The Blue Book Ratings are works for hire of Blue Book.

43.     Blue Book's Rating comprises several data points, including a credit worth estimate, a trade practices rating in the form of an "X" rating, and a pay rating.

44.     To create the credit worth estimate, facts concerning liquidity, asset management, debt management, debt to equity, return on equity or profitability are selected and evaluated.  Blue Book primarily obtains these facts from company financial statements.  The credit worth estimate is denoted in thousands, so a business with a credit worth estimate of "500M" would be rated to be extended credit of $500,000.

45.     To create the "X" rating, facts concerning reliability, honesty, trustworthiness, competency, efficiency, and resourcefulness of a business are selected. Blue Book also solicits trade references to provide comments about these subject areas, which Blue Book evaluates and synthesizes to create the "X" rating.  An "X" rating of "XXXX" denotes an excellent business, and the scale descends through a single "X," which denotes a poor rating.

46.     To create the pay rating, Blue Book considers the pay practices experienced by those who have extended credit to the subject company.  Blue Book focuses on the average time a buyer takes to make payments to most vendors, including an approximation of the number of days between invoice date and the seller's receipt of payment.  Consideration is given to the following key factors:  (1) delay in the arrival of invoices; (2) delayed settlement of claims against the product shipped; (3) the special nature of some transactions in which the amount due is not fixed by arrival time at destination (*e.g.*, consignment or price-after sale).

47.     Blue Book further annotates many of its Ratings with a numerical key that addresses over 150 special situations that Blue Book deems important to its members.  A copy of the Numeral Key is shown at Exhibit B.

48.     Blue Book's analytical process incorporates quantitative and qualitative analysis of various potential sources of risk to an organization's financial health so that its members can make informed decisions about whether to extend credit or otherwise undertake the risk of dealing in perishable goods with a potential counterparty.

49.     The primary Blue Book analyst responsible for the analysis of a company and the analyst's team leader develop an initial rating recommendation based on the analytical process outlined above.  Each rating recommendation is reviewed and modified, as appropriate, through a rigorous process that involves Blue Book's analysts and senior rating officers who possess relevant expertise.  The final rating outcome is determined by one or more Blue Book analysts after a robust discussion of the pertinent rating issues and financial data in light of Blue Book's proprietary ratings criteria.

**B.     Blue Book Makes Its Ratings Information Available on Its Website and Updates It Daily**

50.     Because of the perishable nature of produce, Blue Book members must make real-world financial decisions in reliance on the copyrighted Blue Book Ratings and other ratings information that Blue Book creates, which in many cases are extremely time-sensitive.  Recognizing this, Blue Book disseminates its ratings opinions, along with other opinions and information, as soon as practicable following the finalization of the rating review process, generally on a daily basis.

51.     Specifically, each day, Blue Book's analysts input new and updated Ratings into its automated database.  From there, the Blue Book Ratings can be repeatedly displayed and saved by authorized users of the database. Authorized users access the Blue Book Ratings from the database by way of the Blue Book website.

52.     Once the rating is published, Blue Book monitors and updates the rating by regularly reviewing the company's creditworthiness.  Blue Book's analysts continually monitor current developments (*e.g.*, surveys, financial statements, public documents, and news events) to evaluate the potential impact on a company's rating.  Significant developments can result in a rating review, as well as modification of the rating.  The analyst will typically initiate a formal

review of the rating upon becoming aware of any information that might reasonably be expected to result in a rating action.

53.     Blue Book publishes its copyrighted works on Blue Book's website.

54.     All users of the Blue Book website are required to comply with Blue Book's Terms of Use which prohibit the reposting of Blue Book Ratings to any third-party website.

55.     The Blue Book Terms of Use state, in relevant part:

> You acknowledge and agree that BBSI is the exclusive owner or licensor of the Products and Services and that BBSI retains all right, title and interest in and to all intellectual property and proprietary rights, including without limitation, all patent rights, trademarks, trade names, inventions, copyrights, know-how and trade secrets relating to the Products and Services, and any component thereof. **You further acknowledge and agree that the Database and all ratings, reports, and information obtained by or through these Products and Services, or by and through Blue Book Membership, are provided for your internal use only, and you may not loan or show or in any way share or distribute such ratings, reports, information, or data to third-parties. You also agree not to post, provide, or share the BBSI credit rating, including the Pay Rating, Credit Worth Estimate, or Score, assigned to you or your firm with any third party for publication on the internet, in print or otherwise, including e-commerce web sites or other electronic or print directories or databases**.

Terms of Use §1 (available at https://www.producebluebook.com/terms-of-use/)(boldface in original).  *See* Ex. C.

56.     Thus, the posting of any Blue Book Ratings on the PMG Website exceeds the scope of each member's limited license.

57.     Moreover, in order to gain access to the Blue Book Ratings automated database, where the individual Ratings of produce companies may be searched for and viewed, either singly or as a group, the user must first become a licensed subscriber by executing Blue Book's Membership Agreement, and accepting Blue Book's Terms of Use, thereby acknowledging Blue

Book's copyrights in the Blue Book Ratings and other proprietary information in the database and agreeing not to repost any ratings on any third party websites.

**C.    Blue Book Has Invested Enormous Resources in Creating Its Copyrighted Works**

58.    Blue Book has invested substantial resources in developing its proprietary methodology, collecting and analyzing public and private information about a wide range of companies, conducting surveys, and developing and marketing the various products and services that incorporate the Blue Book Ratings and related ratings information.

59.    In order to recoup its very significant investment in the creation of its copyrighted Blue Book Ratings, Blue Book charges its subscribers and other customers a license fee for the subscribers' and other customers' use of the Blue Book Ratings and other works.

60.    Such license fees enable Blue Book to generate the revenue necessary not only to maintain its ratings business but to expand and improve the services and products that it offers to its customers. Without the ability to generate such revenue, Blue Book would not be able to continue to create new copyrighted works (*e.g.*, the Ratings) and make them available to its customers across the country.

**D.    Blue Book Has Registered the Copyright in Its Ratings as Part of an Automated Database**

61.    Blue Book owns the copyright in an automated database titled "Blue Book Database of Credit Ratings and Company Listings"; (the *"Database"*) that contains the copyrighted Blue Book Ratings and related rating information. *See* Ex. A (explanation regarding Blue Book ratings information).

62.    Given the nature of its work and its need to protect its Blue Book Ratings, Blue Book has opted to submit an application for a group registration comprising its automated database

of its Blue Book Ratings, satisfying all of the filing requirements of the Copyright Office's Circular 65. *See* United States Copyright Office, Circular 65 (*"Circular 65"*), attached as Exhibit D.

63.     Upon information and belief, S&P and Moody's, two prominent major credit rating agencies, have also protected their ratings and rating information by obtaining group registrations of their automated databases. Also, other prominent businesses that provide business ratings, such as A.M. Best (insurance) and Health Grades (hospitals) have also registered their ratings databases using the process outlined in Circular 65.

64.     Blue Book's Database is comprised of multiple records of Blue Book Ratings and related rating information for each company that Blue Book rates. Each such record contains copyrightable material, including the Blue Book Ratings themselves. Attached hereto as Exhibit E is a sample record from the Database.

65.     The Database, containing Blue Book's Ratings and related rating information, current as of July 17, 2018, has been registered with the United States Copyright Office pursuant to 17 U.S.C. § 408(c)(1) and 37 C.F.R. § 202.3(b)(5). A copy of the Registration Certificate (TX0008591601) for the Database is attached hereto as Exhibit F.

66.     Blue Book initially registered its copyright with the United States Copyright Office in the Database as well as the quarterly Database updates for rating events issued during the three-month period beginning April 1, 2013 through June 30, 2013 (TX0007802589), pursuant to 17 U.S.C. § 408(c)(1) and 37 C.F.R. § 202.3(b)(5). Copies of this Registration Certificate for this period is attached hereto as Exhibit G.

67.     In October 2018, Blue Book submitted its application to register the Database containing Blue Book Ratings for the three-month period following the July registration that produced Registration Certificate (TX0008591601).

68.     Unlike databases containing real-world, discoverable facts such as lists of names and addresses, bibliographic information or other compilations of discoverable facts, Blue Book's Database compiles original, creative, expressive works– its unique Blue Book Ratings, and related rating information–for use by its licensed subscribers and other authorized users of Blue Book's information.

**E.     Farm Journal Opts to Copy Blue Book's Ratings Rather than Create Its Own Ratings**

69.     In or about December of 2015, Farm Journal purchased a former competitor of Blue Book that published a competing ratings guide called the "Red Book."

70.     Red Book previously provided its own ratings of businesses in the produce industry.

71.     Blue Book and Red Book competed vigorously for decades.  However, after Farm Journal assumed control of Red Book, it opted to cease publication of the Red Book.

72.     For example, Red Book's website, RBCS.com no longer has Red Book ratings, but rather redirects to PMG's website.

73.     In or about the Spring of 2018, Farm Journal launched the PMG Website.

74.     Rather than create its own independent ratings, Farm Journal simply chose to repackage Blue Book's ratings as part of its "financial snapshot" and resell that information to its licensed subscribers for a hefty annual fee, which Farm Journal asserts on the PMG Website are valued in in the range of $1,648 - $5,044 per subscriber.  *See* Ex. H.

75.     Farm Journal's misuse of Blue Book's ratings contains no transformation or change to Blue Book's copyrighted material—they are simply identical copies of Blue Book's work, the sale and commercial benefits of which accrue to Farm Journal instead of the rightful owner of the material, Blue Book.

76.     Accordingly, Farm Journal's misuse of Blue Book's ratings is for commercial purposes.

77.     In fact, Farm Journal's improper use of Blue Book's ratings are specifically designed to commercially compete against the very competitor whose copyrighted works Farm Journal and its users have misappropriated.

78.     Farm Journal's actions in distributing and displaying unauthorized copies of the Blue Book Ratings through its website and inducing Blue Book's members to post their Blue Book Ratings on the PMG Website in violation of Blue Book's Terms of Use and copyright, without obtaining Blue Book's permission to use those works or paying a fee to do so, all with knowledge that the distribution, display and posting infringed Blue Book's valid copyright in the Blue Book Ratings threatens to irreparably harm, the market for Blue Book's copyrighted Blue Book Ratings.

79.     By undermining Blue Book's ability to generate revenue from the sale and distribution of its copyrighted Blue Book Ratings, Farm Journal's free riding on Blue Book's copyrighted works directly threatens Blue Book's ability to create its Blue Book Ratings and make them available to the many customers throughout North America who depend on those works in making financial decisions.

**F.     Farm Journal's Infringing Activities Force Blue Book to Launch an Investigation**

80.     Blue Book learned from its customers and from Farm Journal's marketing publications that Farm Journal was distributing and displaying unauthorized copies of Blue Book's Blue Book Ratings on and through its website to Farm Journal's subscribers. Blue Book launched an investigation to determine whether and to what extent Farm Journal was in fact infringing its copyrighted works.

81.     The investigation ultimately confirmed Blue Book's suspicions: Farm Journal has been soliciting and prompting Blue Book's members to post their Blue Book Ratings on the PMG Website by having Blue Book Members enter their Blue Book Rating into a data field titled "Blue

Book Rating." The data field is one of a select few fields used to compile information which makes up the financial snapshot of the company.

82. In response to Farm Journal's soliciting and prompting, hundreds of Blue Book members posted their Blue Book Ratings to the data field titled Blue Book Rating.

83. For example, at least the following Blue Book members have posted their ratings to the PMG Website:

| COMPANY NAME | RATING |
|---|---|
| Combs Wholesale Produce Company | 750M XXXX A |
| Benny's Farm Fresh Distributing Co. Inc. | 1000M XXX A |
| Jacob's Village Farm Corp. | 100M XXX |
| Wonderful Citrus Co. | XXX 3240 |
| Symms Fruit Ranch Inc. | 250 M XXXX |
| Anthony Vineyards Inc. | 50,000M XXXX(40) |
| Vandenberg Inc., JAC | 7500M XXXX |
| Hronis Inc. | 20000M XXXX 40 |
| A&A Organic Farms Corp. | 250M XXX B |
| Peter Rabbit Farms a d/b/a of Amazing Coachella, Inc. | 5000M XXXX |

84. Farm Journal displays and distributes Blue Book Ratings through the PMG Website's financial snapshot page at the request of a subscriber.

85. In some cases, such as Benny's Farm Fresh Distributing Co., Farm Journal displays Blue Book Ratings in the "Profile" section of its website, which is accessible to the general public.

86. Farm Journal displayed Blue Book Ratings on its users' computer screens, thereby allowing the users to download the information.

- 17 -

87.     The posting, solicitation, prompting, distribution and display are all done without the authorization of Blue Book.

88.     Farm Journal knew that these activities violate Blue Book's copyright in the Blue Book Ratings. Farm Journal's actions are done with the intent to to use the PMG Website to infringe and promote the infringement of the Blue Book's copyright, in order to attract customers to its own website and thereby generate revenue from its services and products covering the produce industry.

89.     Farm Journal distributes the PMG Website with the object of promoting its use to infringe Blue Book's copyright in the Blue Book Ratings by clear expression and other affirmative steps.

90.     For example, Farm Journal prompts Blue Book members with a specifically configured data field titled "Blue Book Rating" to post their rating to the financial snapshot portion of the PMG Website.

91.     Farm Journal has stored in its own electronic databases, and reproduced and distributed to its own subscribers, a number of Blue Book's Ratings.

92.     When confronted, Farm Journal employee Mr. Jeff Pence stated that Farm Journal would be making a proposal to Blue Book, ostensibly to resolve the dispute.

93.     Subsequently, however, Mr. Pence sent Blue Book a memorandum stating that over 400 businesses had posted their rating on the PMG Website.  A true and correct copy of that memorandum is attached as Exhibit I.

94.     Farm Journal's memorandum to Blue Book's CEO admitted that Blue Book Ratings were included on the PMG Website, stating "Jim … this memo is written in response to your request for explanation of our inclusion of BlueBook scores on the Produce Market Guide

platform, including our proposal for presentation that we believe is beneficial to the BlueBook business."

95.    However, rather than make a proposal, Farm Journal asserted that the posting of Blue Book Ratings on the PMG Website was *beneficial* to Blue Book.

96.    Specifically, Farm Journal stated in its memorandum that:
PMG already reaches a large and growing audience.  If PMG can deliver value to companies by allowing them to display and brag on their BlueBook score – then we think that adds value to BlueBook, as well.  If a company sees a competitor displaying their BlueBook score, maybe that competitive pressure prods them to talk with you about becoming a BlueBook member?  And if a user who is a BlueBook subscriber on PMG can quickly get to a BlueBook profile in a single click – then that user has gotten good value from both of us.

97.    Upon information and belief, Farm Journal has been displaying and distributing the Blue Book Ratings of hundreds of additional companies subsequent to the delivery of the memorandum referenced above.

98.    Each of the aforementioned Blue Book Ratings is independently copyrighted and also is encompassed by the copyright registrations obtained by Blue Book for the Database and its updates.

99.    All Blue Book Ratings alleged to have been directly or indirectly infringed between April 18, 2018 to July 17, 2018 are encompassed by the copyright registration.

## G.    Farm Journal Confuses the Public as to Whether the PMG Website is Endorsed or Otherwise Affiliated with Blue Book

100.    Farm Journal requires its customers to accept the terms of use of the PMG Website before accessing its services and products.

101.    In its own terms of use, Farm Journal asserts that the PMG Website is protected by copyright, and that the materials on the PMG Website are owned by or licensed to Farm Journal:

The contents of the AgWeb.com and all Farm Journal Media websites are protected by U.S. and international copyright laws. The contents of the AgWeb.com and all Farm Journal Media websites,

> including Podcasts, Content Feeds, API Content and other features, are owned by or licensed to us. In the case of User Materials (as defined in the "User Materials" section below), the contents are licensed to the AgWeb.com and all Farm Journal Media websites by the user.

Ex. J.

102.    The PMG Website Terms of Use do not require Farm Journal's subscribers to respect the valuable intellectual property of Blue Book, *i.e.*, Blue Book's copyrights in its Ratings appearing on the Farm Journal website.

103.    Farm Journal claimed copyright protection for Blue Book's Ratings which it publishes on its website.

104.    In addition to the above, Farm Journal uses: (i) a data field titled "Blue Book Rating;" (ii) advertisements that tout the Blue Book Rating as part of the financial snapshot; and (iii) a "sell sheet" listing pricing packages which promote unlimited "industry pay practice ratings" in its "Expert Package" for $2,844 per year (which it claims is a $5,044 value).

105.    This likely causes confusion, mistake, and deception amongst subscribers as to whether Farm Journal is a licensee or otherwise endorsed by Blue Book or whether the display, distribution, and use of the Blue Book Rating is authorized by Blue Book.  Farm Journal has no such authorization.

106.    As a result of actual confusion, deception, and mistake Farm Journal obtains subscribers it would otherwise not have if its subscribers where not confused, mistaken or deceived.

## H.    Farm Journal's Improper Use of Blue Book's Intellectual Property Misleads the Public by Knowingly Allowing Its Members to Post False and Inflated Ratings

107.    In addition to the aforementioned unauthorized acts, Farm Journal wrongfully and intentionally deceives subscribers and the public into believing the Blue Book Ratings displayed by Farm Journal on the PMG Website are current and accurate.

108.    The Ratings that appear on the PMG Website in several instances are neither current nor accurate.

109.    In its initial investigation, Blue Book detected that certain of the ratings posted to the PMG Website were not accurate.

110.    Blue Book raised this issue with Farm Journal directly.

111.    Farm Journal declined to remove the false and inaccurate ratings.  Instead, it made only cosmetic changes, such as linking back to Blue Book's main webpage and noting the date when the rating was improperly posted.

112.    In at least one instance, Farm Journal published and maintained on its website a Blue Book rating that is inaccurate and misleading.  Specifically, Blue Book assigned one of its members– Jacobs Village, Inc. of Brooklyn, NY–a rating of 100M XXX 83 in March of this year.

113.    However, Jacob's Village self-reported a Rating of 100M XXX on the PMG Website, leaving off the 83, which refers to "special circumstances."

114.    Subsequently, Blue Book reported two interim numerals–76 (under investigation) and 27 (reported slow pay)– in May.  However, there was no change in the self-reported rating; it was maintained as 100M XXX.  In June, Blue Book assigned a Rating of 100M XXX (148)(81).  Again, there was no change in the Rating on the PMG Website—to this day, the Rating is self-reported as 100M XXX.

115.    Another example is Savco USA Corp., which does not even have a Rating, yet it reports a rating of XXX B, one "X" below the highest possible Rating.

116.    Moreover, Farm Journal's actions create the misleading impression that it has Blue Book's consent to copy, republish, and redistribute Blue Book's copyrighted information for its own commercial purposes.  For example, in the pricing packages section of its website, it

advertises unlimited "industry pay practice ratings" in its "Expert Package" for $2,844 per year, which it claims is $5,044 value.

117.   A sample of the Blue Book Ratings posted to the PMG Website is attached as Exhibit K.

118.   As a result of such conduct, Blue Book has suffered and continues to suffer significant and irreparable harm, because its copyrighted material and other proprietary information is being reproduced and distributed by Farm Journal without Blue Book's permission, in a manner to likely to cause confusion and deception as to the authorization and accuracy of the Blue Book Ratings.

119.   Farm Journal's PMG Website targets the same customers as, and directly competes with, those of Blue Book, and are likely to usurp Blue Book's own business relationships and opportunities by diverting away its customers and potential customers if allowed to continue.

## FIRST CAUSE OF ACTION
### (Direct Copyright Infringement)

120.   Blue Book repeats and realleges the allegations set forth in paragraphs 1 through 119 as if fully set forth herein.

121.   By its actions described above and for its profit, Farm Journal has directly infringed Blue Book's copyrights in the Blue Book Ratings by providing its subscribers, at least during the period from April 18, 2018 to July 17, 2018, access to a database through the PMG Website from which unauthorized copies of the Blue Book Rating can be displayed and distributed through a computer.

122.   Farm Journal further directly infringes because the PMG Website, at the request of subscribers has, at least during the time period of at least April 18, 2018 to July 17, 2018, displayed and distributed unauthorized copies of the Blue Book Ratings through a computer.

123.    Farm Journal further infringes by creating unauthorized derivative works, during the above noted time period, based upon the Blue Book Ratings in the form of Farm Journal's own ratings database and financial snapshot embodied in the PMG Website.

124.    Such conduct by Farm Journal infringes Blue Book's copyrights and constitutes a violation of the exclusive rights granted to Blue Book under 17 U.S.C. § 106.

125.    Upon information and belief, Farm Journal continues to infringe the Blue Book Ratings and will continue to infringe those materials unless enjoined by this Court.

126.    All of Farm Journal's acts were performed intentionally with knowledge of Blue Book's valid and subsisting copyright in the Blue Book Ratings, in bad faith, and with the purpose of depriving Blue Book of the right to control the use and publication of its copyrighted materials.

127.    Farm Journal's actions, as alleged above, are causing great and irreparable harm to Blue Book and, unless restrained and enjoined by this Court, will continue to cause great and irreparable damage, loss, and injury to Blue Book, leaving it with no adequate remedy at law.

## SECOND CAUSE OF ACTION
### (Inducement of Copyright Infringement)

128.    Blue Book repeats and realleges the allegations set forth in paragraphs 1 through 119 as if fully set forth herein.

129.    Farm Journal by its above described actions induces the infringement of the copyright in the Blue Book Ratings.

130.    The solicitation and the prompting of users of the PMG Website to post their Blue Book Ratings, without authorization and with knowledge of the copyright in each of the Blue Book Ratings, led to the unauthorized posting and copying of the Blue Book Ratings into the PMG Website data field titled Blue Book Ratings by the users of the website.

131.    This solicitation and prompting constitutes the distribution of a service and product with the object of promoting its use to infringe copyright, as shown by clear expression and other

affirmative steps taken to foster the infringement. The complained of acts for this second cause of action commenced or were continuing between April 18, 2018 and July 17, 2018 and continue thereafter.

132.    Farm Journal's inducement causes the direct infringement of Blue Book's exclusive rights under the Copyright Act, including infringement by the users of Blue Book's exclusive right to reproduce the Blue Book Ratings.

133.    Farm Journal also induces infringement by causing Blue Book's members to exceed the scope of their license.

134.    Farm Journal has advertised the PMG Website's access to Blue Book Ratings in national trade journals, including but not limited to "The Packer."

135.    Farm Journal's inducement facilitates, enables, and creates direct links between Farm Journal customers who wish to review other businesses' Blue Book Ratings. Farm Journal's intentional inducement of the infringement of Blue Book's rights in each of the Blue Book Ratings constitutes a separate and distinct act of infringement.

136.    Farm Journal's inducement of the infringement of Blue Book's Ratings is willful, intentional, purposeful, and in disregard of and with indifference to the rights of Blue Book.

137.    As a direct and proximate result of the infringement that Farm Journal intentionally induces, Blue Book is entitled to damages and Farm Journal's profits in amounts to be proven at trial.

**THIRD CAUSE OF ACTION**
(Contributory Copyright Infringement by Knowingly and Materially
Contributing to the Infringement of Plaintiffs' Copyrighted Works,
17 U.S.C. §§ 106(1))

138.    Blue Book repeats and realleges the allegations set forth in paragraphs 1 through 119 as if fully set forth herein.

139. Farm Journal has actual or constructive knowledge of third parties' infringement of Blue Book's exclusive rights under the Copyright Act. Farm Journal knowingly and materially contributes to such infringing activity.

140. For example, on May 19, 2018 and June 11, 2018, Blue Book's CEO has notified Farm Journal personnel that the posting of Blue Book Ratings to the PMG Website by Blue Book members is a violation of Blue Book's Terms of Use and exceeds the members license.

141. Blue Book has also offered, on September 13, 2018, to discuss licensing the Blue Book Ratings to Farm Journal, and sent a copy of its copyright registration.

142. Farm Journal knowingly induces, causes, and/or materially contributes to the infringement of Blue Book's exclusive rights under the Copyright Act, including the infringement of Blue Book's exclusive right to reproduce its Blue Book Ratings. Farm Journal markets the PMG Website as including Blue Book listings.

143. The PMG Website provides a data field titled Blue Book Rating.

144. The PMG Website prompts users to post their Blue Book rating in the data field.

145. The marketing material used to promote the PMG Website touts the financial snapshot of each listed company as providing the key information needed to decide whether to transact with a company.

146. The marketing material shows the Blue Book rating as one of the key pieces of information in the financial snapshot.

147. PMG Website users do in fact, without authorization, post their Blue Book Ratings in the field titled Blue Book Rating on the PMG Website.

148. PMG Website users thus directly infringing Blue Book's reproduction rights.

149. Farm Journal knows that its users, in response to Farm Journal's prompting, post their Blue Book Ratings.

150.    Farm Journal knows the posting infringes Blue Book's copyright.

151.    All of the complained of acts for this third cause of action commenced or were continuing at least between April 18, 2018 and July 17, 2018 and continue thereafter.

152.    Farm Journal further knowingly and induces, causes, and/or materially contributes to the aforementioned acts of infringement, in part, by supplying access to the PMG Website, which facilitates, encourages, enables, and creates direct links between Farm Journal's PMG Website users and infringing businesses, and further allows unrelated third parties to view ratings without permission from Blue Book.

153.    Farm Journal's knowingly causing infringement, inducing infringement, and/or materially contributing to infringement of Blue Book's rights in each of their Blue Book Ratings constitutes a separate and distinct act of infringement.

154.    Farm Journal's knowingly causing infringement, inducing infringement, and/or materially contributing infringement of Blue Book's Ratings is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Blue Book.

155.    As a direct and proximate result of the infringement to which Farm Journal knowingly and materially contributes, Blue Book is entitled to statutory damages and/or Farm Journal's profits in amounts to be proven at trial.

## FOURTH CAUSE OF ACTION
(Vicarious Copyright Infringement)

156.    Blue Book repeats and realleges the allegations set forth in paragraphs 1 through 119 as if fully set forth herein.

157.    Users of the PMG Website, as previously stated, post their Blue Book Ratings on the PMG Website.

158.    The posting of Blue Book Ratings on the PMG Website is without authorization from Blue Book.

159.    As such, this posting violates Blue Book's exclusive right to reproduce the copyrighted Blue Book Ratings

160.    Farm Journal receives a direct financial benefit from the posting of Blue Book Ratings on the PMG Website.

161.    The posting of Blue Book Ratings allows Farm Journal to offer its subscribers company financial snapshots which include the Blue Book Ratings.

162.    The snapshots are only provided on an unlimited basis to subscribers that pay a significant fee.

163.    Farm Journal has the right and ability to control and supervise the infringing activity, in part because Farm Journal supplies the data field specifically configured and titled to accept the infringing posts.

164.    Farm Journal's vicarious infringement of the Blue Book Ratings constitutes a separate and distinct act of infringement.

165.    Farm Journal's vicarious infringement of Blue Book's Ratings is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Blue Book.

166.    Farm Journal has an obvious and direct financial interest in the infringing conduct, in part because it commercially benefits from the Blue Book Rating appearing on the PMG Website.

167.    As a direct and proximate result of the infringement for which Farm Journal is vicariously liable, Blue Book is entitled to damages and Farm Journal's profits in amounts to be proven at trial.

168.    The complained of acts for this fourth cause of action commenced or were continuing at least between April 18, 2018 and July 26, 2018 and continue thereafter.

**PRAYER FOR RELIEF**

WHEREFORE, Blue Book respectfully requests that judgment be entered in its favor and against Farm Journal for the following relief:

A. That the Court issue a declaration that Farm Journal's acts and conduct directly and vicariously infringe Blue Book's copyright in its ratings as alleged above;

B. That the Court issue a declaration that Farm Journal's acts and conduct are willful;

C. That the Court issue a preliminary and permanent injunction directing that Farm Journal, its agents, representatives and employees, and all persons in privity therewith be preliminarily and permanently enjoined and restrained from:

(1) copying, reproducing, publishing or distributing Blue Book's copyrighted materials in any form or medium;

(2) publishing, selling, marketing, distributing or otherwise making available to third parties, directly or indirectly, in any form or medium any products or services containing, in whole or in part, any of Blue Book's copyrighted materials; and

(3) making false representations of copyright ownership with respect to any Blue Book Ratings or other Blue Book copyrighted materials.

D. That the Court direct Farm Journal and its directors, officers, agents, employees, and representatives, and all persons and entities in privity with or under the control of Farm Journal, to:

(1) remove from all websites, servers, computer systems, databases and storage devices in the custody or control of Farm Journal or its affiliates, any and all of Blue Book's Ratings that appear or are contained therein and deliver up all copies of such materials for destruction; and

(2)     cause to be removed and permanently deleted from all websites, servers, computer systems, databases and storage devices any representation that Farm Journal is the copyright owner of any Blue Book Rating.

E.     That the Court require Farm Journal and its officers, agents, employees, or representatives, and all persons in privity with Farm Journal, to file with this Court and serve upon Blue Book a report in writing and under oath setting forth in detail the manner and form in which Farm Journal has complied with the terms of the preliminary injunction;

F.     That the Court award Blue Book actual and/or statutory damages pursuant to 17 U.S.C. § 504;

G.     That the Court find that Farm Journal's copyright infringement was, and continues to be, willful and that Farm Journal's liability to Blue Book for each such infringement be increased to the maximum amount allowed of $150,000 per work infringed should Blue Book elect to recover statutory damages pursuant to 17 U.S.C. § 504;

H.     That the Court order Farm Journal to pay any other general, special, punitive and compensatory damages permitted by law;

I.     That Farm Journal be required to account to Blue Book for all profits realized from Defendant's copyright infringement, and to pay Blue Book for all damages sustained by Blue Book on account of the aforesaid acts of copyright infringement;

J.     That the Court award pre-judgment interest to Blue Book;

K.     That the Court require Farm Journal to pay to Blue Book the costs of this action, including attorneys' fees and disbursements incurred, pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 505; and

L.     Such other and further relief as this Court deems just and equitable.

## JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure Blue Book hereby demands a trial by jury on each claim of the above-referenced Complaint so triable.

DATED: October 25, 2018

<div style="margin-left:40%">

Respectfully Submitted

BLUE BOOK SERVICES, INC.

By _____/s/ James M. Heiser_____
             One of Its Attorneys

</div>

James M. Heiser
Eric Silvestri
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000
(312) 701-2361 (Fax)
heiser@champan.com
silvest@chapman.com