# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BLUE BOOK SERVICES, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 18 CV 07155 |
| FARM JOURNAL, INC., | ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Blue Book Services, Inc. ("Blue Book") brings this action complaining that defendant, Farm Journal, Inc. ("Farm Journal"), infringed Blue Book's copyright in its "Blue Book Ratings" in violation of 17 U.S.C. § 106. Blue Book has moved for a preliminary injunction while Farm Journal has moved to dismiss the complaint pursuant to Federal Rule of Procedure 12(b)(6) for failure to state a claim. For the reasons set forth below, Farm Journal's motion to dismiss is granted. Accordingly, Blue Book's motion for a preliminary injunction is denied as moot.

## BACKGROUND[1]

Blue Book sells information on the reliability and creditworthiness of companies in the produce industry. Compl. ¶ 39, ECF No. 1. A "significant feature" of its business is the "Blue Book Rating." *Id.* ¶ 40. The Blue Book Rating is itself a composite of three separate ratings: a "credit worth estimate," a "trade practices rating," and a "pay rating." *Id.* ¶ 41. The credit worth estimate, expressed in thousands (500M = $500,000), indicates the maximum amount of credit for

---

[1] As with all motions to dismiss, the Court must accept all well-pleaded facts in the Amended Complaint as true and draw all permissible inferences in favor of the plaintiffs. *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012).

which Blue Book deems a company reliable. *Id.* ¶ 44. The trade practices rating, denoted by one to four Xs (lowest to highest), synthesizes "facts concerning reliability, honesty, trustworthiness, competency, efficiency, and resourcefulness." *Id.* ¶ 45. The pay rating, signified by a letter ranging from F to AA (lowest to highest), summarizes the reliability and speed with which buyers make payments to vendors. *Id.* ¶ 46; *see* Compl. Ex. A at 2, ECF No. 1-1. In addition, many Blue Book Ratings include a "numerical key that addresses over 150 special situations" relevant to companies in the produce business. Compl. ¶ 47. Blue Book publishes a database of Blue Book Ratings for subscribers online and updates the database daily. *Id.* ¶¶ 50-51.

Blue Book has, on two separate occasions, registered a copyright with the United States Copyright Office covering its database of Blue Book Ratings. In 2013, Blue Book applied for and received a copyright registration that covered the database as published on April 1, 2013, as well as any updates published through June 30, 2013. *Id.* ¶ 66; *see also* Compl. Ex. G, ECF No 1-7. Next, in 2018, Blue Book received a registration that covered updates between April 18, 2018 and July 17, 2018. Compl. ¶ 65; *see also* Compl. Ex. F, ECF No 1-6.

In late 2015, Farm Journal purchased a competitor of Blue Book that had, for decades, published a competing collection of ratings called Red Book. Compl. ¶¶ 69, 71. Farm Journal shuttered the Red Book operation and launched "the PMG Website" to replace it. *Id.* ¶¶ 71-73. The PMG Website provides "financial snapshots" of companies in the produce industry. *Id.* ¶ 74. Blue Book learned from various sources, including its own independent investigation, that Farm Journal was posting Blue Book Ratings as one piece of its financial snapshots. *Id.* ¶¶ 80-81. Farm Journal obtained the information about Blue Book's ratings by soliciting Blue Book members to post their Ratings on the PMG Website. *Id.* ¶¶ 81, 90. Hundreds of Blue Book members have done

2

so. *Id.* ¶ 82. The Blue Book Ratings posted by Farm Journal are available to Farm Journal subscribers and, in some cases, the public. *Id.* ¶¶ 84-85.

Blue Book confronted Farm Journal employee Jeff Pence about this practice, but Farm Journal refused to stop and stated that the practice was "beneficial to the BlueBook [sic] business." *Id.* ¶¶ 92-94. Shortly thereafter, Blue Book brought this action alleging that Farm Journal was infringing Blue Book's copyright in its Blue Book Ratings.

## DISCUSSION

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the complaint fails to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a motion to dismiss under Rule 12(b)(6), a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 680-82.

Prior to bringing a suit for copyright infringement, a party must comply with the requirements of 17 U.S.C § 411(a). *See Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 806 (7th Cir. 2009) ("Compliance with the registration requirements of 17 U.S.C. § 411(a) is not a condition of copyright protection but is a prerequisite to suing for infringement."). The most straightforward method of complying with § 411(a) is to apply for and successfully register a copyright claim. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892, 203 L. Ed. 2d 147 (2019) (holding that § 411(a) is satisfied when "the Register has registered a copyright after examining a properly filed application"). Refusal by the Register of Copyrights

3

is not, however, the end of the road. In the case of refusal, the would-be claimant can still bring a suit if "notice thereof, with a copy of the complaint, is served on the Register of Copyrights." 17 U.S.C. § 411; *see also Brooks-Ngwenya*, 564 F.3d at 806 ("[S]ection 411(a) is explicit that an applicant refused registration may still sue for infringement.").

In the present case, Blue Book argues that it properly followed the first route: it registered a copyright claim in its database of Blue Book Ratings and has brought suit to enforce that claim. Farm Journal maintains, however, that the portion of Blue Book's application at issue in this case—coverage of the individual ratings—was rejected. Blue Book does not allege that Farm Journal infringed on its database as a whole, nor does it claim alternative compliance with § 411(a) through refusal and notification. Therefore, if Farm Journal is correct, Blue Book has not complied with § 411(a) and is not entitled to institute a copyright enforcement action.

**I. The Scope of Blue Book's Registered Copyright**

It is undisputed that Blue Book received two valid copyright registrations pertaining to the database of Blue Book Ratings—Tx 7-802-589, registered May 15, 2013 and Tx 8-591-601, registered July 26, 2018. *See* Compl. Ex. F, ECF No 1-6; Compl. Ex. G, ECF No 1-7. The issue is the scope of those copyright registrations; did they cover the text of individual Blue Book Ratings or only the database as a whole?

To answer this question on a motion to dismiss, the Court "must consider not only 'the complaint itself,' but also 'documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.'" *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-1020 (7th Cir. 2013) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir.2012)).

In this case, the Court includes two exhibits in its review. First, the copyright registrations, which Blue Book attached as exhibits to the complaint, were referenced repeatedly in, and are central to, the complaint. Further, multiple courts have found that "[c]ertificates of Registration from the U.S. Copyright Office are public records that the court may take judicial notice of without converting a Rule 12(b)(6) motion to a motion for summary judgment." *White v. Marshall*, 693 F. Supp. 2d 873, 884 (E.D.Wis.2009); *see also Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 924 (N.D. Ill. 2013). And to the extent that these exhibits contradict the complaint's allegations, "the exhibit[s] take[ ] precedence." *Id.* at 1020.

Second, the correspondence between Blue Book and the Copyright Office, which Farm Journal attached as an exhibit to the briefing on the motion to dismiss, is also properly considered as a matter of judicial notice. Judicial notice is proper where the fact is "not subject to reasonable dispute." *See* Fed.R.Evid. 201(b). Here, the correspondence is a public record and can be requested in certified form from the Copyright Office. *See* Records Research and Certification Services, COPYRIGHT.GOV, https://www.copyright.gov/rrc/. As such, it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (finding, in the context of a motion to dismiss, that "[j]udicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper"). The correspondence relating to the copyright registrations, which is of equivalent reliability to the registrations themselves, should receive the same treatment.

Understanding the scope of the registrations starts, unsurprisingly, with the registrations themselves. Both registrations refer to the registered work as a "compilation of database material." *See* Compl. Ex. F, ECF No 1-6; Compl. Ex. G, ECF No 1-7. The Copyright Act defines a

5

compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. The Copyright Compendium, which "provides instruction to agency staff regarding their statutory duties," states that registration of a compilation "does not necessarily mean that every element of the work is protected by copyright." Compendium of U.S. Copyright Practices Intro, § 508.2 (3d ed. 2017) ("Compendium"). Rather, a compilation registration does not cover "preexisting material or data that appears in the compilation unless that material or data is expressly claimed in the registration." *Id.* § 508.2. To expressly claim material in a database, "the applicant should describe the specific form of authorship that the author contributed to that material, such as 'text,' 'photographs,' 'artwork,' or the like." *Id.* § 727.3(D). The Compendium provides straightforward examples of such authorship claims—for example, "Compilation and text." *Id.* The Office will only approve claims to underlying material where "there is a sufficient amount of creative expression in those elements." *Id.* § 1117.2.

Although the underlying availability of copyright protection and the scope of the registration issued are distinct legal issues, the former provides helpful context to the Compendium's instructions. In copyright, "[o]riginality is a constitutional requirement" and "[o]riginal . . . means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345-46 (1991). As a result, the extent of possible protection for a compilation tracks the extent of originality:

> [I]f the compilation author clothes facts with an original collocation of words, he or she may be able to claim a copyright in this written expression. Others may copy the underlying facts from the publication, but not the precise words used to present them . . . Where the

6

compilation author adds no written expression but rather lets the facts speak for themselves, the expressive element is more elusive. The only conceivable expression is the manner in which the compiler has selected and arranged the facts. Thus, if the selection and arrangement are original, these elements of the work are eligible for copyright protection.

*Id.* at 349. The Compendium's policy of refusing to protect database material that lacks sufficient "creative expression" serves to implement the distinction drawn in *Feist*.

Even considering only the text of the registrations without the benefit of additional correspondence, the sole plausible conclusion is that the Copyright Office rejected Blue Book's attempt to register a copyright claim in the individual Blue Book Ratings. Each certificate registers a claim for a "compilation of database material" without any reference to "text." This is standard language for claims where the only protected original contribution is the "selection, coordination, and/or arrangement." *See* Compendium § 1117.7(B).

The correspondence serves only to confirm this conclusion. In applying for an updated copyright in its database of Ratings, Blue Book traded several emails with the Copyright Office. During that exchange, Blue Book requested a registration that included "new text." *See* Mem. Supp. Farm Journal's Mot. Dismiss Ex. 2 at 5, ECF No. 33-3. In response, the Copyright Office pushed back: "[T]he work deposited consists only of a listing of words and short phrases. This material will not support a registration based on text . . . Copyright does not protect words and short phrases, which courts have ruled are too short to be copyrightable." *Id.* After Blue Book attempted to explain the textual authorship, the Copyright Office confirmed its prior analysis, "Right now the only text we can see in the deposit material is de minimis or factual – addresses, contact information and the numerical rating. This is just a compilation of data right now without you giving us more." *Id.* at 2. The Copyright Office informed Blue Book that absent new text or an altered description of the work, the registration would be rejected: "[Y]ou can either send us an

7

example of the significant new text that the author added to the database for this date range, or you can remove it and keep the authorship description as 'compilation of data'. . . If you choose to do neither, we must refuse registration." *Id. See also* Compendium § 727.3(D) ("If the applicant asserts a claim to copyright in . . . any feature of the database that is uncopyrightable, the specialist may communicate with the applicant or may refuse registration if the claim appears to be based solely on those features."). At one point toward the end of the exchange, Blue Book argued that "the ratings text is not de minimis or factual," and that there "should be some reference to 'text' in the authorship," but declared nevertheless that "we are satisfied" with a registration description that omitted reference to "text" "as long as the ratings are covered by the registration." *See* Mem. Supp. Farm Journal's Mot. Dismiss Ex. 2 at 2, ECF No. 33-3. The Copyright Office did not confirm that the registrations extended to the ratings, however, and Blue Book's conditional "satisfaction" with the registration description if it were deemed to include the individual ratings does not constitute an endorsement of that position by the Copyright Office or imbue the registration description with meaning that is at odds with the otherwise clear description of the scope of the registration: that it extends to the "updated and revised compilation of database material" only. And although Blue Book never explicitly admitted defeat on this front, it ultimately accepted the compilation description: "As you suggest, please describe the authorship as 'Updated and revised compilation of database material.'" *Id.* at 1.

In sum, the Copyright Office's communication reads as a clear attempt to follow the holding of *Feist*: the Office rejected a claim in the text of the ratings because there was insufficient

original authorship. Expressing no view on whether the determination was correct,[2] the only plausible interpretation of the exchange is that the Office declined to register the individual Ratings and that the registration extended only to the database compilation. Further, although that exchange related only to the 2018 registration, it provides indirect evidence that the 2013 registration, which contained an equivalent description of the authorship, similarly did not cover the underlying ratings.

The Court therefore concludes that Blue Book's copyright registration extends to the compilation of its Blue Book Ratings, but not in the text of the individual Ratings.[3]

## II. The Consequences of Failure to Notify the Copyright Office

As noted above, refusal by the Copyright Office is not the end of the road. Upon refusal of a registration, a party may institute a civil action for infringement "if notice thereof, with a copy of the complaint, is served on the Register of Copyrights." 17 U.S.C § 411(a). Blue Book does not claim compliance with this requirement. *See* Resp. to Farm Journal's Mot. Dismiss at 1-2, ECF

---

[2] Blue Book argues that a Copyright Officer's opinion does not constitute an authoritative decision by the Copyright Office, but that argument conflates the issue of whether the scope of the registration was properly limited by the Copyright Office, which is not presented here, with the issue of what the scope of the registrations issued by the Copyright Office is, which is the relevant issue. Whether erroneously or not, the Copyright Office did not issue registrations that extended to the ratings included in Blue Book's database compilation.

[3] Blue Book does not argue that Farm Journal has infringed on the compilation. More importantly, even if Blue Book wanted to proceed on that basis, the complaint does not plead facts indicating compilation infringement: Farm Journal re-published individual Blue Book Ratings as part of its own "financial snapshots" divorced from Blue Book's presentation or organization. The "select[ion], coordinat[ion], [and] arrange[ment]" are distinct. *See* 17 U.S.C. § 101. As a result, without a registration covering the Ratings, Blue Book's complaint does not plead a plausible claim for infringement of any sort: "[t]o establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.". *See Feist*, 499 U.S. at 361. A compilation claim lacks the requisite copying.

9

No. 40 ("In fact, even if the registration had been rejected, Blue Book could still file suit and have the issues resolved by this Court under § 411(a).").

What follows from non-compliance? In *Brooks-Ngwenya*, the Seventh Circuit reviewed a case in which the district court did not enforce the § 411(a) requirements. 564 F.3d at 807. The Seventh Circuit stated that "[w]hile not 'strictly jurisdictional' these requirements are nevertheless 'mandatory,'" and "the district court should have insisted on Brooks–Ngwenya's compliance with the requirement that she notify the Copyright Office about her lawsuit." *Id.* at 807-08.[4]

Although "insistence" on compliance could, in theory, take the form of a stay pending proper notification, § 411(a) requires dismissal without prejudice. In *Brooks-Ngwenya*, the Seventh Circuit described the two alternatives contemplated by § 411(a)—registration and notification—as equivalent: both are "prerequisites" to suit. 564 F.3d at 807-808. Because failure to strictly comply with the registration requirement indisputably results in dismissal, this equivalence counsels in favor of dismissal in the present case. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019) (affirming dismissal of suit filed after application for, but before registration of, a copyright). Further, in dealing with § 411(a), courts have often compared it to other statutory schemes that require dismissal for failure to comply with preconditions to suit. For example, in *Reed Elsevier, Inc. v. Muchnick*, the Supreme Court compared § 411(a) to "Title VII's requirement that sex-discrimination claimants timely file a discrimination charge with the EEOC." 559 U.S. 154, 166 (2010); *see also Fourth Estate Pub.*

---

[4] In that case, the Seventh Circuit proceeded to decide the case on the merits because, at that point, the issue was "academic": "the Register ***did*** weigh in during the litigation, not by intervening but by granting Brooks–Ngwenya's renewed application. *Indianapolis Pub. Sch.*, 564 F.3d at 808 (emphasis original). The court reasoned, "[t]he purpose of the notification requirement having been fulfilled, we can proceed to the merits." *Id.*

*Benefit Corp.*, 139 S. Ct. at 887 ("[R]egistration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights."). It is well-settled that failure to comply with Title VII's filing provision requires dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991). Similarly, in describing the notification requirement as "mandatory," the Seventh Circuit cited *Hallstrom v. Tillamook County*, a case in which the Supreme Court explicitly rejected staying litigation to permit compliance with a statutory notification period. *See Brooks-Ngwenya*, 564 F.3d at 808 (citing *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989)). In *Hallstrom*, the Supreme Court observed that "'[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.' . . . [A] district court may not disregard these requirements at its discretion." 493 U.S. at 31 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). This Court will not disregard the procedural requirements specified by the legislature; failure to comply with § 411(a) requires dismissal of this case, albeit without prejudice to Blue Book's ability to institute a new action upon compliance with § 411(a)'s requirements.[5]

*     *     *

Farm Journal's motion to dismiss is granted: this case is dismissed. This is an appealable order disposing of this case and accordingly a Judgment Order in favor of Farm Journal will be

---

[5] On this Court's initial review, it appears that Farm Journal's "time periods" argument—that many, if not most, of the ratings reproduced on the PMG Website were not covered by either of Blue Book's three-month registrations—may have merit. In filing any future complaint, Blue Book would do well to consider the argument and its implications for the availability of meaningful relief.

entered. The dismissal is without prejudice to the substance of Blue Book's claims, however. Blue Book's pending motion for a preliminary injunction is denied as moot.

Date: January 27, 2020

John J. Tharp, Jr.
United States District Judge